John P. Kristensen (SBN 224132)
Jesenia A. Martinez (SBN 316969)
**KRISTENSEN LLP**
12540 Beatrice Street, Suite 200
Los Angeles, California 90066
Telephone: 310-507-7924
Facsimile:  310-507-7906
*john@kristensenlaw.com*
*jesenia@kristensenlaw.com*

Kenton J. Hutcherson (*Pro Hac Vice*)
**HUTCHERSON LAW PLLC**
3400 Oak Grove Avenue, Suite 350
Dallas, Texas 75204
Telephone: 214-443-4200
Facsimile: 214-443-4210
*kjh@hutchersonlaw.com*

**Attorneys for Plaintiff**

## THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| LARRY G. PHILPOT, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> THE BALTIMORE POST-EXAMINER D/B/A THE LOS ANGELES POST-EXAMINER, a Maryland limited liability company, <br><br> Defendant. | ) Case No.: 3:20-cv-00872-H-MSB <br> ) <br> ) **PLAINTIFF'S RESPONSE IN** <br> ) **OPPOSITION TO DEFENDANT'S** <br> ) **MOTION FOR SUMMARY** <br> ) **JUDGMENT** <br> ) <br> ) Judge: Marilyn L. Huff <br> ) Date: August 16, 2021 <br> ) Time: 10:30 AM <br> ) Courtroom: 15A, 15th Floor <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

# <u>TABLE OF CONTENTS</u>

Table of Contents..................................................................................................... ii

Table of Authorities ............................................................................................... iii

I.   Preliminary Statement ...................................................................................... 1

II.  Statement of Facts ........................................................................................... 1

III. Argument and Authorities ............................................................................... 5

    A.   Objection to Defendant's Motion for Summary Judgment ............... 5

    B.   Applicable Legal Standards ................................................................ 6

    C.   The Post-Examiner is Not Entitled to Summary Judgment on
        Its Affirmative Defense of Fair Use. .................................................. 7

        1.   The first factor weighs against fair use.................................... 8

                a.   The Post-Examiner's uses of the Ted Nugent
                      Photo were not transformative. ..................................... 8

                b.   The Post-Examiner's uses of the Ted Nugent
                      Photo were commercial rather than non-profit. .......... 12

        2.   The second factor weighs against fair use............................. 13

        3.   The third factor weighs against fair use. ............................... 14

        4.   The fourth factor weighs against fair use. ............................. 15

        5.   Weighing the factors together............................................... 19

    D.   The Post-Examiner is Not Entitled to Summary Judgment on
        Its Affirmative Defense of Statute of Limitations. .......................... 19

IV.  Conclusion..................................................................................................... 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>TABLE OF AUTHORITIES</u>**

**Cases**

*A.V. v. iParadigms, LLC*,
    562 F.3d 630 (4th Cir. 2009)....................................................8

*American Geophysical Union v. Texaco, Inc.*,
    60 F.3d 913 (2d Cir. 1995)......................................................7

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...............................................................7

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
    No. 19-2420-cv, 2021 U.S. App. LEXIS 8806
    (2d Cir. March 26, 2021)..............................................15, 18

*APL Microscopic, LLC v. United States*,
    144 Fed. Cl. 489 (2019) ...............................................22, 23

*Authors Guild v. Google, Inc.*,
    804 F.3d 202 (2d Cir. 2015) ................................................13

*Barcroft Media, Ltd. v. Coed Media Group, LLC*,
    297 F. Supp. 3d 339 (S.D.N.Y. 2017)..............................9, 19

*Brammer v. Violent Hues Prods., LLC*,
    922 F.3d 255 (4th Cir. 2019)...........................................passim

*BWP Media USA, Inc. v. Gossip Cop Media, Inc.*,
    196 F. Supp. 3d 395 (S.D.N.Y. 2016)............................10, 16

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994) ................................................7, 14, 15, 16

*Free Speech Systems, LLC v. Menzel*,
    390 F. Supp. 3d 1162 (N.D. Cal. 2019) .................................24

*Friedman v. Guetta*,
    No. CV 10-00014 DDP (JCx), 2011 U.S. Dist. LEXIS 66532,
    2011 WL 3510890 (C.D. Cal. May 27, 2011) .........................15

*Harper & Row, Publishers, Inc. v. Nation Enters.*,
    471 U.S. 539 (1985) ................................................11, 12, 13, 14

*Jacobsen v. Katzer*,
    535 F.3d 1373 (Fed. Cir. 2008).......................................17, 18

*Konangataa v. Am. Broadcasting Companies, Inc.*,
    No. 16-CV-7382 (LAK), 2017 U.S. Dist. LEXIS 95812,
    2017 WL 2684067 (S.D.N.Y. June 21, 2017)...........................9

*L.A.Times v. Free Republic*,
    No. CV 98-7840 MMM (AJWx), 2000 U.S. Dist. LEXIS 5669
    (C.D. Cal. Mar. 31, 2000) ...........................................................................7

*Maples v. 3M Co.*,
    No. CV 16-3576-GW(GJSx), 2017 U.S. Dist. LEXIS 225904
    (C.D. Cal. May 15, 2017) ...........................................................................7

*Media Rights Techs., Inc. v. Microsoft Corp.*,
    922 F.3d 1014 (9th Cir. 2019) ............................................................20, 23

*Minden Pictures, Inc. v. BuzzFeed, Inc.*,
    309 F. Supp. 3d 461 (S.D.N.Y. 2019) ................................................24, 25

*Minden Pictures, Inc. v. The Excitant Grp., LLC*,
    No. CV 20-08146 PA (JPRx), 2020 U.S. Dist. LEXIS 247769
    (C.D. Cal. Dec. 22, 2020) .........................................................................24

*Monge v. Maya Magazines, Inc.*,
    688 F.3d 1164 (9th Cir. 2012) ......................................................11, 12, 13

*Morris v. Young*,
    925 F. Supp. 2d 1078 (C.D. Cal. 2013) ...................................................14

*Murphy v. Millennium Radio Grp. LLC*,
    650 F.3d 295 (3d Cir. 2011) .....................................................................11

*New York v. Micron Tech., Inc.*,
    No. C 06-6436 PJH, 2009 U.S. Dist. LEXIS 1624
    (N.D. Cal. Jan. 5, 2009).........................................................................5, 6

*Nunez v. Caribbean Int'l News Corp.*,
    235 F.3d 18 (1st Cir. 2000) ........................................................................9

*Philpot v. LM Communs. II of S.C., Inc.*,
    No. 5:17-CV-173-CHB, 2018 U.S. Dist. LEXIS 113927,
    2018 WL 3371038 (E.D. Ky. July 10, 2018) ..........................................10

*Philpot v. Media Research Center, Inc.*,
    279 F. Supp. 3d 708 (E.D. Va. 2018)......................................10, 11, 17

*Philpot v. MyArea Network, Inc.*,
    No. 8:20-cv-1239-VMC-TGW, 2021 U.S. Dist. LEXIS 119423,
    2021 WL 2649236 (M.D. Fla. June 28, 2021) .........................................11

*Philpot v. WOS, Inc.*,
    No. 1:18-CV-339-RP, 2019 U.S. Dist. LEXIS 67978,
    2019 WL 1767208 (W.D. Tex. April 22, 2019)................................11, 13

*Rentmeester v. Nike, Inc.*,
    883 F.3d 1111 (9th Cir. 2018) ..................................................................13

*Rivera v. Anaya*,
    726 F.2d 564 (9th Cir. 1984) ......................................................................5

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
        464 U.S. 417 (1984) ................................................................12

*Stewart v. Abend*,
        495 U.S. 207 (1990) ................................................................13

**Statutes**

17 U.S.C. § 101 ..............................................................................23

17 U.S.C. § 106 ..............................................................................22

17 U.S.C. § 107 ................................................................................7

17 U.S.C. § 507(b) ...........................................................................19

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................6

**Constitutional Provisions**

U.S. Const. art. I, § 8, cl. 8 ............................................................18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.   PRELIMINARY STATEMENT

Defendant The Baltimore Post-Examiner d/b/a The Los Angeles Post-Examiner, a Maryland Limited Liability Company ("The Post-Examiner" or "Defendant") pled six affirmative defenses in its Answer.[1]  The parties completed discovery, and now Defendant moves for summary judgment not on Plaintiff's claim for copyright infringement or any of its six pled affirmative defenses, but on two new, unpled affirmative defenses.  The Post-Examiner presents minimal argument and authorities, and instead implies that the appropriateness of summary judgment is so obvious that the Court need not bother with the specific details of the law.  As it turns out, the law is not as simple as Defendant makes it out to be.  Specifically, the key case Defendant relies upon for the defense of fair use is no longer good law.  And the key case Defendant relies upon for its statute of limitations defense is inapplicable for multiple reasons.  Defendant cannot establish either of its affirmative defenses on which it moves for summary judgment, and therefore its motion must be denied.

## II.   STATEMENT OF FACTS

1. The Post-Examiner did not transform or alter the Ted Nugent Photo.[2]

2. The Post-Examiner's use of the Ted Nugent Photo was not

---

[1] *See* Defendant's Answer [Doc. 14], September 15, 2020

[2] *See* Declaration of Larry G. Philpot in Support of His Response in Opposition to Defendant's Motion for Summary Judgment, August 2, 2021, attached as Exhibit 1, ("Philpot Response Dec.") at ¶ 2.

accompanied by any criticism, comment, news reporting, teaching, scholarship, or research related to the photo.[3]

3.    Defendant's use of the Ted Nugent Photo was to identify Ted Nugent.[4]

4.    Philpot created the Ted Nugent Photo to identify Ted Nugent.[5]

5.    The Post-Examiner utilizes Google Ads, direct digital ads, sponsored content, and donations on the webpages on its websites.[6]

6.    Philpot created the Ted Nugent Photo by employing several creative decisions, including selecting the subject matter, angle of photography, exposure, composition, framing, location, and exact moment of creation.**[7]**

7.    Defendant had no particular reason to use the Ted Nugent Photo.**[8]**

8.    Philpot offered the Ted Nugent Photo under a Creative Commons 3.0 License, which requires attribution—listing Philpot's name and his website where he licenses his images for money—which holds economic value just like

---

[3] *See id.* at ¶ 3.

[4] *See* Deposition Transcript of Timothy William Maier as the Corporate Representative for The Baltimore Post Examiner ("The Post-Examiner Depo."), March 22, 2021, attached as Exhibit 2, at 147:14-21.

[5] *See* Philpot Response Dec. at ¶¶ 4, 6.

[6] *See* The Post Examiner Depo. at 33:19-34:2.

[7] *See* Philpot Response Dec. at ¶ 5.

[8] *See* The Post-Examiner Depo. at 85:11-86:4.

advertising.**[9]**

9.    Several third parties have obtained a Creative Commons 3.0 License to use the Ted Nugent Photo.[10]

10.    Philpot regularly conducted image searches to identify infringements of the Ted Nugent Photo.[11]

11.    Despite reasonable diligence, Philpot did not discover The Post-Examiner's infringement for the webpage located at http://baltimorepostexaminer.com/ted-nugent-disgrace-gop/2014/02/24 until May 9, 2017.[12]

12.    Despite reasonable diligence, Philpot did not discover The Post-Examiner's infringement for the webpage located at http://lapostexaminer.com/ted-nugent-good-democrats/2014/02/25 until May 8, 2017.[13]

13.    Despite reasonable diligence, Philpot did not discover The Post-Examiner's infringement for the webpage located at http://baltimorepostexaminer.com/wp-content/uploads/600px-Ted_Nugent_2013-

---

[9] *See* Declaration of Larry G. Philpot in Support of His Motion for Partial Summary Judgment, Doc. 41-2, July 12, 2021, ("Philpot Motion Dec.") at ¶¶ 12-17.

[10] *See* Philpot Response Dec. at ¶ 8, Ex. A.

[11] *See id.* at ¶ 9.

[12] *See* Philpot Motion Dec. at ¶ 19.

[13] *See id.* at ¶ 20.

300x300.jpg until May 18, 2018.[14]

14.     Philpot took a screenshot of The Post-Examiner webpage located at http://baltimorepostexaminer.com/ted-nugent-disgrace-gop/2014/02/24 on May 9, 2017.[15]

15.     Philpot took a screenshot of The Post-Examiner webpage located at http://lapostexaminer.com/ted-nugent-good-democrats/2014/02/25   on   May   9, 2017.[16]

16.     Philpot took a screenshot of The Post-Examiner webpage located at http://baltimorepostexaminer.com/wp-content/uploads/600px-Ted_Nugent_2013-300x300.jpg on August 10, 2018, although he discovered the infringement of his Ted Nugent Photo at this URL on May 18, 2018.[17]

17.     Philpot filed his Original Complaint on May 8, 2020.[18]

18.     The Post-Examiner webpages existed and displayed the Ted Nugent Photo from May 9, 2017, May 8, 2017, and May 18, 2018, respectively, until at

---

[14] *See id.* at ¶ 21.

[15] *See id.* at ¶ 27, Ex. H.

[16] *See id.* at ¶ 28, Ex. I.

[17] *See id.* at ¶ 29, Ex. J.

[18] *See* Philpot Response Dec. at ¶ 10.

1   least January 15, 2020,[19] April 16, 2020,[20] and January 30, 2020.[21]

2   **III.   ARGUMENT AND AUTHORITIES**

3      **A.   Objection to Defendant's Motion for Summary Judgment**

4          Plaintiff objects insofar as Defendant has not pled the two affirmative

5   defenses on which it moves for summary judgment—fair use and statute of

6   limitations.[22]  The Ninth Circuit has held that a defendant may plead an affirmative

7   defense for the first time at summary judgment, so long as the plaintiff is not

8   prejudiced.[23]

9          Here, Plaintiff is clearly prejudiced by Defendant's two new affirmative

10  defenses.  Plaintiff has not had any opportunity to conduct discovery over the new

11  affirmative defenses, instead relying upon Defendant's pleaded defenses in its

12  Answer.[24]  Discovery is especially important in this case because both fair use and

13  the statute of limitations are fact-intensive.  The fourth fair use factor entails an

14  analysis of market harm for which experts are often retained to testify.  And the

15

16

17

18

19  _____

20          [19] *See* Philpot Motion Dec. at ¶ 24, Ex. E.

21          [20] *See id.* at ¶ 25, Ex. F.

22          [21] *See id.* at ¶ 26, Ex. G.

23          [22] *See, generally,* Defendant's Answer [Doc. 14], September 15, 2020.

24          [23] *See Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir. 1984).

25          [24] *See New York v. Micron Tech., Inc.*, No. C 06-6436 PJH, 2009 U.S. Dist.
    LEXIS 1624, at *18 (N.D. Cal. Jan. 5, 2009) ("Prohibiting plaintiff from
26  conducting discovery on these defenses will clearly place plaintiff at an unfair
    disadvantage because plaintiff will be unable to explore the factual and legal bases
27  of these defenses, which in turn will significantly impair plaintiff's ability to prepare
    to rebut or defend against these defenses in dispositive motions or at trial.").

28

statute of limitations involves a factual inquiry as to whether the plaintiff should have reasonably discovered the defendant's infringing conduct during a certain period of time—another instance in which an expert would be needed.  Discovery closed long ago and Plaintiff cannot go back to obtain this important evidence.[25]

Plaintiff is also prejudiced insofar as he is unable to file his own motion for summary judgment on Defendant's new affirmative defenses.  Plaintiff timely moved for summary judgment on each affirmative defense asserted in Defendant's Answer.  It is too late for Plaintiff to amend his motion for summary judgment, as such motions were due on July 12, 2021.  It is not incumbent on Plaintiff to guess at which affirmative defenses Defendant will raise and move for summary judgment on, especially because, as explained above, Plaintiff relied upon Defendant's pleadings filed in this lawsuit.[26]  Accordingly, Plaintiff respectfully requests the Court prohibit Defendant from raising the affirmative defenses of fair use and statute of limitations for the first time at summary judgment.

## B.   Applicable Legal Standards

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the

---

[25] Fact discovery closed on March 22, 2021 and expert discovery closed on June 11, 2021.

[26] *See Micron Tech.*, 2009 U.S. Dist. LEXIS 1624, at *20 ("Plaintiff is not required or expected to speculate as to which defenses defendants will assert or to assume that any affirmative defense will be asserted at all.").

1    movant is entitled to judgment as a matter of law."  A genuine dispute as to a

2    material fact exists if a reasonable jury could return a verdict in favor of the

3    nonmoving party.[27]  All evidence must be viewed in a light most favorable to the

4    non-movant and all inferences must be drawn in the non-movant's favor.[28]

5
     ### C.   The Post-Examiner is Not Entitled to Summary Judgment on Its Affirmative Defense of Fair Use.

6          In its Motion for Summary Judgment, for the first time, The Post-Examiner

7    claims that its infringement of the Ted Nugent Photo is protected as fair use.  As

8    fair use is an affirmative defense, The Post-Examiner bears the burden of proof.[29]

9    Accordingly, The Post-Examiner "must conclusively establish all essential

10   elements of that defense" in order to obtain summary judgment.[30]  The doctrine of

11   fair use is governed by 17 U.S.C. § 107, which weighs four factors:

12              (1) the purpose and character of the use, including whether
                such use is of a commercial nature or is for nonprofit
                education purposes; (2) the nature of the copyrighted
                work; (3) the amount and substantiality of the portion used
                in relation to the copyrighted work as a whole; and (4) the
                effect of the use upon the potential market for or value of
                the copyrighted work.

          Defendant neither identifies these factors nor addresses them specifically.

---

[27] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[28] *See Maples v. 3M Co.*, No. CV 16-3576-GW(GJSx), 2017 U.S. Dist. LEXIS 225904, at *6 (C.D. Cal. May 15, 2017) (citation omitted).

[29] *L.A.Times v. Free Republic*, No. CV 98-7840 MMM (AJWx), 2000 U.S. Dist. LEXIS 5669, at *21 (C.D. Cal. Mar. 31, 2000) (citing *American Geophysical Union v. Texaco, Inc.*, 60 F.3d 913, 918 (2d Cir. 1995)).

[30] *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994).

ristensen LLP
ATTORNEYS FOR PLAINTIFFS

Instead, Defendant relies on a case which is no longer good law.  As Defendant fails to satisfy its burden to "conclusively establish all essential elements of the defense," summary judgment should be denied.

### 1.   The first factor weighs against fair use.

#### a.   The Post-Examiner's uses of the Ted Nugent Photo were not transformative.

As the Fourth Circuit articulated in *Brammer v. Violent Hues Prods., LLC*, "The 'central purpose' of the first factor's transformation inquiry is to determine 'whether the new work merely 'supersede[s] the objects' of the original creation.'"[31]  The Court noted that contextual transformation is typically only found in two situations—technological uses and documentary uses.[32]  Technological uses use the copyrighted work for technological functions, such as placing entire student essays into a database for a plagiarism detection service.[33]  For documentary uses, the work is used to document a historical event and is "frequently accompanied by commentary on the copyrighted work itself."[34]

---

[31] *Brammer v. Violent Hues Prods., LLC*, 922 F.3d 255, 262 (4th Cir. 2019).

[32] *See id.* at 263-64.

[33] *Id.* at 264 ("In the first category, copyrighted works provide raw material for new technological functions.  These functions are indifferent to the expressive aspects of the copied works.  For example, we have held transformative the total reproduction of student essays for a plagiarism detection service because the database served an 'entirely different function' that was unrelated to the expressive content of those essays. . . . This only makes sense: a contrary ruling would have risked impairing the functionality of these new information-sorting technologies.") (*quoting A.V. v. iParadigms, LLC*, 562 F.3d 630, 639 (4th Cir. 2009)).

[34] *Id.* at 264.

In *Barcroft Media, Ltd. v. Coed Media Group, LLC,* the United States District Court for the Southern District of New York explained that criticism, commentary, and news reporting must be about the work itself—not the subject of the work—to qualify as fair use:

> CMG's use . . . had no transformative effect because it displayed the Images in the same manner and for the same purpose as they were originally intended . . . Display of a copyrighted image . . . may be transformative where the use serves to illustrate criticism, commentary, or a news story about that work. . . . [A] news report about a video that has gone viral . . . might fairly display a screenshot . . . to illustrate what all the fuss is about. . . . [A] depiction of a controversial photograph might fairly accompany a work of commentary or criticism about the artistic merit or appropriateness of the photograph. In each such case, the copyrighted work is itself the subject of the story, transforming the function of the work in the new context.[35]

Here, The Post-Examiner did not transform or alter the Ted Nugent Photo.[36]  The Post-Examiner's use of the Ted Nugent Photo was not accompanied by any criticism, comment, news reporting, teaching, scholarship, or research related to the photo.[37]  The Post-Examiner claims that "[it] used the asserted Ted Nugent photo

---

[35] *Barcroft Media, Ltd. v. Coed Media Group, LLC*, 297 F. Supp. 3d 339, 351-52 (S.D.N.Y. 2017) (citing *Konangataa v. Am. Broadcasting Companies, Inc.*, No. 16-CV-7382 (LAK), 2017 U.S. Dist. LEXIS 95812, 2017 WL 2684067, at *1 (S.D.N.Y. June 21, 2017) and *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 25 (1st Cir. 2000)).

[36] *See* Philpot Response Dec. at ¶ 2.

[37] *See id.* at ¶ 3.

only in connection with political commentary…"[38]  That may have been The Post-Examiner's purpose behind the article, but its use of the Ted Nugent Photo was the same as Philpot's—to identify Ted Nugent.[39]  In such situations where a party simply republishes a copyrighted photograph, there is no fair use.[40]

The Post-Examiner relies on the Eastern District of Virginia's decision in *Philpot v. Media Research Center, Inc.*, 279 F. Supp. 3d 708 (E.D. Va. 2018) ("*MRC*").  However, *MRC* is no longer good law.  In 2019, the Fourth Circuit (the E.D. Va. is within the Fourth Circuit) made clear in *Violent Hues* that simply using a photograph's content for informative or illustrative purposes, as Defendant did with the Ted Nugent Photo, does not qualify as fair use:

> The copying here does not fall into either of these categories, as Violent Hues used the Photo expressly for

---

[38] Motion at 4.

[39] *See* Philpot Response Dec. at ¶ 4.  *See also* The Post-Examiner Depo. at 147:14-21 ("Q: What is the purpose of including photographs on the articles that you publish on the websites?  A: Sometimes they just give a face to a picture.  I mean, a face in the story and it just – for that reason.  Q:  Why is that important?  A: Sometimes people want to know what the person looks like.").

[40] *See Philpot v. LM Communs. II of S.C., Inc.*, No. 5:17-CV-173-CHB, 2018 U.S. Dist. LEXIS 113927, at *20-21, 2018 WL 3371038 (E.D. Ky. July 10, 2018) ("Defendant cannot demonstrate that 'fair use' protects it from liability for use of the copyrighted Nelson photograph because the copy was not used for 'criticism, comment, news reporting, teaching, . . . scholarship, or research' and the . . . copy of the Nelson photograph on Defendant's website—was not 'transformative' since it did nothing more than 'repackage or republish the original copyrighted work.'") (citation omitted); *BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395, 407 (S.D.N.Y. 2016) ("The Court has found no case . . . in which the use of an image solely to present the content of that image, in a commercial capacity, was found to be fair.").

its content—that is, to depict Adams Morgan—rather than for data organization or historical preservation. Instead, Violent Hues' sole claim to transformation is that its secondary use of the Photo provided film festival attendees with "information" regarding Adams Morgan. But such a use does not necessarily create a new function or meaning that expands human thought; if this were so, virtually all illustrative uses of photography would qualify as transformative.[41]

Indeed, since *MRC*, multiple courts have denied fair use motions for summary judgment in similar cases involving Philpot.[42] Furthermore, the Ninth Circuit has cautioned against automatically finding fair use where the alleged purpose is news reporting, as is the claim in this instance.[43]

---

[41] *Violent Hues*, 922 F.3d at 264.

[42] *See, e.g., Philpot v. MyArea Network, Inc.*, No. 8:20-cv-1239-VMC-TGW, 2021 U.S. Dist. LEXIS 119423, at *19, 2021 WL 2649236 (M.D. Fla. June 28, 2021) ("While MyArea argues the photographs were transformed because they were used for news and commentary, this argument is unpersuasive when taking the evidence in the light most favorable to Philpot because the articles did not provide commentary or criticism of the photographs themselves."); *Philpot v. WOS, Inc.*, No. 1:18-CV-339-RP, 2019 U.S. Dist. LEXIS 67978, at *13, 2019 WL 1767208 (W.D. Tex. April 22, 2019) ("When, as here, a work is reproduced exactly for the same purpose, the use is not transformative.").

[43] *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1173 (9th Cir. 2012) (quoting *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 557 (1985)) ("While the parties agree that the pictures at issue are newsworthy, we must nevertheless proceed cautiously because [t]he promise of copyright would be an empty one if it could be avoided merely by dubbing the infringement a fair use news report of the [work].") (brackets in original) (internal quotations omitted); *see also id.* ("In other words, fair use has bounds even in news reporting, and no per se 'public interest' exception exists. *See, e.g., Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 307 (3d Cir. 2011) ('[N]ews reporting does not enjoy a blanket exemption from copyright. News organizations are not free to use any and all copyrighted works without the permission of the creator simply because they wish to report on the same events a work depicts.')").

### b. The Post-Examiner's uses of the Ted Nugent Photo were commercial rather than non-profit.

The United States Supreme Court articulated that "the crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price."[44]   A commercial use of a work weighs against a finding of fair use.[45]   The Post-Examiner testified that it utilized Google Ads, direct digital ads, sponsored content, and donations which supports a commercial purpose.[46]   The Post-Examiner argues that its use of the Ted Nugent Photo should not be considered commercial because it is a news organization and "it generated at most $2" in advertising revenue from its use of the Ted Nugent Photo.[47]   However, The Post-Examiner cites no authority for the proposition that a commercially unsuccessful use weighs less in favor of fair use than a commercially successful use.  The amount of revenue generated from a use of a copyrighted work is irrelevant—the fact that a party attempted to make money is sufficient in a fair use analysis.[48]

---

[44] *Harper & Row*, 471 U.S. at 562.

[45] *See Monge*, 688 F.3d at 1176 (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 451 (1984)) ("The Supreme Court has stated that 'every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright.'").

[46] *See* The Post Examiner Depo. at 33:19-34:2.

[47] Motion at 4.

[48] *See Violent Hues*, 922 F.3d at 265 ("Violent Hues' website did not generate direct revenue or run advertising.  But Violent Hues is a limited liability company,

## 2.      The second factor weighs against fair use.

The second factor—the nature of the copyrighted work—evaluates whether the work is creative versus purely factual.[49]  Tellingly, the Post-Examiner does not address this factor in any way.  Photographs generally receive "thick" copyright protection because they involve several creative choices, even though they may document a factual event.[50]  Photography made with creative decisions, including selecting the subject matter, angle of photography, exposure, composition, framing, location, and exact moment of creation is creative, rather than factual, and weighs

_____

and it used the Photo on its website to promote a for-profit film festival.  On their own, these facts tend to demonstrate commercial use."); *WOS, Inc.*, 2019 U.S. Dist. LEXIS 67978, at *11 ("Although WOS downplays its uses as 'nominally commercial' because the Chesney article brought in only $6.41, the question is whether WOS 'st[ood] to profit from exploitation of the copyrighted material without paying the customary price'—here, attribution—and not whether WOS was especially successful at profiting from its exploitation.").

[49] *See Stewart v. Abend*, 495 U.S. 207, 237 (1990) ("'[A] use is less likely to be deemed fair when the copyrighted work is a creative product.'  In general, fair use is more likely to be found in factual works than in fictional works.") (citation omitted).

[50] *See Violent Hues*, 922 F.3d at 266-67 ("When determining the thickness of a photograph's copyright, a court weighs the 'range of creative choices available . . .'  As a basic matter, photographs . . . have long received thick copyright protection.  This is so even though photographs capture images of reality.") (*quoting Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1120-21 (9th Cir. 2018) and *Authors Guild v. Google, Inc.*, 804 F.3d 202, 220 (2d Cir. 2015)).  *See also Monge*, 688 F.3d at 1177 ("Photos are generally viewed as creative, aesthetic expressions of a scene or image and have long been the subject of copyright. . . . Simply because a photo documents an event does not turn a pictorial representation into a factual recitation of the nature referenced in *Harper & Row*.  Photos that we now regard as iconic often document an event—whether the flight of the Wright Brothers' airplane, the sailor's kiss in Times Square in V-J Day, the first landing on the moon, or the fall of the Berlin Wall.").

against a finding of fair use.[51]  Philpot created the Ted Nugent Photo by employing each of these types of creative decisions.[52]  Accordingly, this factor conclusively weighs against fair use.

### 3. The third factor weighs against fair use.

Courts must inquire "not only about the quantity of the materials used, but about their quality and importance, too."[53]  Once again, The Post-Examiner fails to address this factor.  The defendant must take no more than is necessary to accomplish its purpose.[54]  The Supreme Court has held that copying the "heart" of a work, e.g. its "most interesting and moving parts," weighs against fair use even when only a small portion of a work is used.[55]  Where the defendant uses a portion of photograph of a person, including the person's face, courts have general found

---

[51] *See Violent Hues,* 922 F.3d at 267 ("In taking the photograph at issue here, Brammer made many creative choices. . . . This creativity entitles the Photo to thick copyright protection.  Although Brammer could not prevent others from taking night-time photographs of Adams Morgan, he surely can assert his rights in his own expression of that scene."); *Morris v. Young*, 925 F. Supp. 2d 1078, 1086-87 (C.D. Cal. 2013) ("'Works that are creative in nature, such as photographs that are meant to be viewed by the public for informative and aesthetic purposes, are closer to the core of intended copyright protection than are more fact-based works.' . . . photography is, by nature, at least minimally creative. Morris states that he made several creative decisions in taking the Subject Photograph, including 'selecting the subject matter, angle of photograph, exposure, composition, framing, location,' and the exact moment of creation. The Court finds that the Subject Photograph is creative in nature.") (citations omitted).

[52] *See* Philpot Response Dec. at ¶ 5.

[53] *Campbell*, 510 U.S. at 587.

[54] *Violent Hues*, 922 F.3d at 267-68.

[55] *See Harper & Row*, 471 U.S. at 564-65.

that they copied the "heart" of the copyrighted work.[56]  Here, The Post-Examiner used the entirety of the Ted Nugent Photo.  Additionally, there is no fair use where the appropriator had no reason to use the specific work at issue to accomplish its purpose.[57]  The Post-Examiner admitted that it had no particular reason to use the Ted Nugent Photo—it could have used any photograph of Ted Nugent to accomplish its purpose.[58]  Accordingly, this factor weighs against fair use.

### 4.    The fourth factor weighs against fair use.

The Post-Examiner argues the fourth factor weighs in favor of fair use because there is no showing of any impact on any economic market for the Ted Nugent Photo.  However, "[s]ince fair use is an affirmative defense, its proponent would have difficulty carrying the burden of demonstrating fair use without favorable evidence about relevant markets."[59]   The Post-Examiner cites no

---

[56] *See, e.g., Friedman v. Guetta*, No. CV 10-00014 DDP (JCx), 2011 U.S. Dist. LEXIS 66532, at *18, 2011 WL 3510890 (C.D. Cal. May 27, 2011) ("[T]he degree to which Defendant borrowed elements from Plaintiff's Photograph was both quantitatively and qualitatively substantial. Defendant . . . used substantial portions of that photograph, including the three individuals' faces. . . . and the portion Defendant took was at the heart of the Photograph.").

[57] *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, No. 19-2420-cv, 2021 U.S. App. LEXIS 8806, at *39-40 (2d Cir. March 26, 2021) ("Nor can Warhol's appropriation of the Goldsmith Photograph be deemed reasonable in relation to his purpose.  While Warhol presumably required a photograph of Prince to create the Prince Series, AWF proffers no reason why he required *Goldsmith*'s photograph.") (italics in original).

[58] *See* The Post-Examiner Depo. at 85:11-86:4.

[59] *See Campbell*, 510 U.S. at 590.

evidence regarding market harm.  Additionally, as noted above, it is too late for Plaintiff to obtain evidence of market harm as discovery is closed.  This prejudice warrants denying Defendant's summary judgment motion outright.

When evaluating the fourth factor—the effect of the use upon the potential market for or value of the copyrighted work—courts must consider "not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original."[60]   There is a presumption of cognizable market harm "when a commercial use is not transformative but instead 'amounts to mere duplication of the entirety of an original.'"[61]   This presumption still applies when less than the entirety of a work is used for commercial purposes but the use "duplicate[s] the heart of the work by copying [the work's] most expressive features."[62]   As explained above, The Post-Examiner's use included the heart of the Ted Nugent Photo, and therefore the presumption of market harm applies.

In cases where the infringer puts the photo to the same use as the original, courts routinely find that this factor weighs against a finding of fair use.[63]   The Post-

---

[60] *Id.*

[61] *Violent Hues*, 922 F.3d at 268 (*quoting Campbell*, 510 U.S. at 591).

[62] *Violent Hues*, 922 F.3d at 268.

[63] *See BWP Media*, 196 F. Supp. 3d at 410 ("[T]he relevant market for Plaintiff's images consists of the universe of celebrity news reporting outlets;

Examiner used the Ted Nugent Photo to identify Ted Nugent. Plaintiff markets the Ted Nugent Photo for the same purpose.[64]

The Post-Examiner, by way of *Media Research Center*, contends that Plaintiff uploads his photographs to Wikimedia free of charge, and therefore there cannot exist a presumption of market harm. That is false. Philpot offered the Ted Nugent Photo under a Creative Commons 3.0 License, which requires attribution— listing Philpot's name and his website where he licenses his images for money— which holds economic value just like advertising.[65] The argument that an attribution requirement is synonymous with "free" was expressly rejected by the Federal Circuit which recognized the economic benefit to attribution.[66]

As the Fourth Circuit held in *Violent Hues*, "The fair use affirmative defense

_____

Plaintiff sustains its business by licensing photographs, such as the images at issue here, to third-party reporters who publish celebrity gossip stories. . . . Defendant used the photo in exactly the same manner as any celebrity news site would: To tell a particular story about that particular celebrity.").

[64] *See* Philpot Response Dec. at ¶¶ 4, 6.

[65] *See* Philpot Motion Dec. at ¶¶ 12-17; *see also Jacobsen v. Katzer*, 535 F.3d 1373, 1379 (Fed. Cir. 2008) ("Traditionally, copyright owners sold their copyrighted material in exchange for money. The lack of money changing hands in open source licensing should not be presumed to mean that there is no economic consideration, however. There are substantial benefits, including economic benefits, to the creation and distribution of copyrighted works under public licenses . . . beyond traditional license royalties.").

[66] *Jacobsen*, 535 F.3d at 1382 ("The attribution . . . requirements directly serve to drive traffic to the open source incubation page and to inform downstream users of the project, which is a significant economic goal of the copyright holder that the law will enforce.").

exists to advance copyright's purpose of 'promoting the Progress of Science and useful Arts.'"[67]   There are "close to 100,000,000 works licensed under various Creative Commons licenses"[68]—and these licenses certainly advance copyright's purpose of promoting the progress of the sciences and useful arts.  However, if every unlicensed use of a Creative Commons work were considered fair use, offering works under a Creative Commons license would be tantamount to abdicating copyright altogether and involuntarily contributing works to the public domain.

There clearly is a market for the Philpot Photos.  The Post-Examiner's actions certainly prove this fact as it chose to copy the Ted Nugent Photo out of thousands of photos of Ted Nugent.   Additionally, several third parties have obtained a Creative Commons license to use the Ted Nugent Photo.[69]  Widespread use of the Ted Nugent Photo without proper attribution or for a paid license would impair the potential market for the Philpot Photos, as well as for any photographer who licenses photos under Creative Commons—no one would comply, or have incentive to comply, with the attribution conditions.[70]

---

[67] *Violent Hues*, 922 F.3d at 262 (quoting U.S. Const. art. I, § 8, cl. 8).

[68] *Jacobsen*, 535 F.3d at 1378.

[69] *See* Philpot Response Dec. at ¶ 8, Ex. A.

[70] *See Andy Warhol Found.*, 2021 U.S. App. LEXIS 8806, at *46-47 ("[W]e must consider the impact on this market if the sort of copying in which Warhol engaged were to become widespread practice.  That harm is also self-evident.  There currently exists a market to license photographs of musicians, such as the

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**5.     Weighing the factors together.**

Weighing the factors together is easy because none of the factors weigh in favor of fair use.  Indeed, The Post-Examiner's use was simply for a commercial purpose to make its articles more visually interesting in an effort to bring in viewers and bolster advertising revenue.  The Fourth Circuit squarely held in *Violent Hues* that such use does not constitute fair use:

> Violent Hues did not comment on the Photo, promote the Photo, "remix" the Photo, or otherwise engage with the Photo in a way that might stimulate new insights.  What Violent Hues did was publish a tourism guide for a commercial event and include the Photo to make the end product more visually interesting.  Such a use would not constitute fair use when done in print, and it does not constitute fair use on the Internet.[71]

**D.     The Post-Examiner is Not Entitled to Summary Judgment on Its Affirmative Defense of Statute of Limitations.**

17 U.S.C. § 507(b) provides that "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."  "Under the 'discovery rule,' a copyright infringement claim accrues—and the statute of limitations begins to run—when a party discovers, or reasonably

---

Goldsmith Photograph, to serve as the basis of a stylized derivative image; permitting this use would effectively destroy that broader market, as, if artists 'could use such images for free, there would be little or no reason to pay for [them].' This, in turn, risks disincentivizing artists from producing new work by decreasing its value – the precise evil against which copyright law is designed to guard.") (quoting *Barcroft Media*, 297 F. Supp. 3d at 355).

[71] *Violent Hues*, 922 F.3d at 269 (citation omitted).

should have discovered, the alleged infringement."[72]

Summary judgment on The Post-Examiner's statute of limitations affirmative defense should be denied for at least three reasons. *First*, the Declaration of Larry G. Philpot in Support of His Motion for Partial Summary Judgment[73] evidences that, despite his reasonable diligence, Philpot did not discover The Post-Examiner's infringement until May 9, 2017 for the webpage located at http://baltimorepostexaminer.com/ted-nugent-disgrace-gop/2014/02/24, May 8, 2017 for the webpage located at http://lapostexaminer.com/ted-nugent-good-democrats/2014/02/25, and May 18, 2018 for the webpage located at http://baltimorepostexaminer.com/wp-content/uploads/600px-Ted_Nugent_2013-300x300.jpg.[74]  In fact, Philpot took a screenshot of The Post-Examiner webpage located at http://baltimorepostexaminer.com/ted-nugent-disgrace-gop/2014/02/24 on May 9, 2017.[75]  Philpot also took a screenshot of The Post-Examiner webpage located at http://lapostexaminer.com/ted-nugent-good-democrats/2014/02/25 on May 9, 2017—a day after he discovered the infringement of his Ted Nugent Photo at this URL.[76]  Finally, Philpot took a screenshot of The Post-Examiner webpage

[72] *Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1022 (9th Cir. 2019) (citations omitted).

[73] *See* Plaintiff's Memorandum of Points and Authorities in Support of His Motion for Partial Summary Judgment, Doc. 41-1, July 12, 2021, Ex. 1.

[74] *See* Philpot Motion Dec. at ¶¶ 19-21.

[75] *See id.* at ¶ 27, Ex. H.

[76] *See id.* at ¶ 28, Ex. I.

located     at     http://baltimorepostexaminer.com/wp-content/uploads/600px-Ted_Nugent_2013-300x300.jpg on August 10, 2018, although he discovered the infringement of his Ted Nugent Photo at this URL on May 18, 2018.[77]     Thus, Philpot's claim for copyright infringement accrued on May 8, 2017.  Since Philpot filed his Original Complaint on May 8, 2020, the statute of limitations does not bar Philpot's claim.[78]

*Second*, The Post-Examiner has no evidence that Philpot discovered The Post-Examiner's infringements of his Ted Nugent Photo prior to May 9, 2017; May 8, 2017; and May 18, 2018, or that with due diligence he should have discovered the infringement prior to those dates.  For example, The Post-Examiner has no evidence that an image search for the Ted Nugent Photo would have yielded its infringing webpages prior to May 8, 2017.  Philpot regularly conducted image searches for the Ted Nugent Photo, and despite this diligence, he did not discover The Post-Examiner's infringements until May 2017.[79]   Accordingly, the only evidence about when Philpot should have discovered The Post-Examiner's infringements is that in using reasonable diligence, he could not have discovered the infringements until he did in May 2017.

*Third*, the fact that Philpot has evidence that The Post-Examiner displayed

---

[77] *See id.* at ¶ 29, Ex. J.

[78] *See* Philpot Response Dec. at ¶ 10.

[79] *See id.* at ¶ 9.

the Ted Nugent Photo on the webpages located at http://baltimorepostexaminer.com/ted-nugent-disgrace-gop/2014/02/24, http://lapostexaminer.com/ted-nugent-good-democrats/2014/02/25, and http://baltimorepostexaminer.com/wp-content/uploads/600px-Ted_Nugent_2013-300x300.jpg from May 9, 2017, May 8, 2017, and May 18, 2018 until at least January 15, 2020, April 16, 2020, and January 30, 2020, respectively, means that The Post-Examiner infringed Philpot's copyright in the Ted Nugent Photo by publicly displaying and distributing it on those dates.  As the United States Court of Federal Claims recently observed, a copyright owner's exclusive rights include (1) the right of reproduction; (2) the right of public distribution; and (3) the right of public display.[80]  In the Internet context, the right of reproduction is violated when a party uploads a copyrighted work to a website,[81] the right of public distribution is violated *each time* the subject webpage is transmitted to a user for viewing,[82] and

---

[80] *See APL Microscopic, LLC v. United States*, 144 Fed. Cl. 489, 493 (2019). *See also* 17 U.S.C. § 106.

[81] *See id.* at 495 ("Once NASA uploaded the Work to its server, a 'copy' was made, which was 'fixed' in the server and capable of being 'perceived, reproduced, or otherwise communicated.'").

[82] *See id.* at 497-98 ("[T]he Court rejects the Government's argument that a distribution occurs when a work is 'made available' for distribution, and instead holds that infringement of the right of public distribution under § 106(3) requires 'actual dissemination of either copies or phonorecords.'  Although NASA did not infringe on APL's right of distribution by uploading the Work to its server, the act of transmitting the webpage—and the Work therein—to a user would infringe on this right.").

the right of public display is violated *each time* a copyrighted work is displayed on a user's computer.[83]   Additionally, the Ninth Circuit has recognized a "separate-accrual rule:"

> In addition to the discovery rule, the "separate-accrual rule" in copyright law provides that "when a defendant commits successive violations [of the Copyright Act], the statute of limitations runs separately from each violation. Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete 'claim' that 'accrue[s]' at the time the wrong occurs."[84]

Thus, even if The Post-Examiner posted the Ted Nugent Photo prior to May 9, 2017, May 8, 2017, and May 18, 2018, respectively, the fact that The Post-Examiner distributed the Ted Nugent Photo over the Internet to Philpot's computer and displayed the Ted Nugent Photo on Philpot's computer on May 9, 2017, May 8, 2017, May 18, 2018, January 15, 2020, April 16, 2020, and January 30, 2020, means that each display constitutes an independent violation of Philpot's copyright in the Ted Nugent Photo on that respective date.   Plaintiff filed this lawsuit within three years of each of those dates.

---

[83] *See id.* at 498 ("The Copyright Act unambiguously states that '[t]o display' a work means to show a copy of it, either directly or by means of a film, slide, television image, or any other device or process . . . .'   The definition's usage of the phrase 'any other device or process' clearly brings showing a copy of a work through a computer within the statutory definition of 'display.'   Thus, each unauthorized showing of a Work through a computer infringes on the owner's right of public display.   Other courts that have considered this issue have reached similar conclusions.") (citing 17 U.S.C. § 101).

[84] *Media Rights Techs.*, 922 F.3d at 1023.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendant solely relies upon *Minden Pictures, Inc. v. BuzzFeed, Inc.*, 309 F. Supp. 3d 461 (S.D.N.Y. 2019) to support this affirmative defense, arguing that because Philpot has filed other copyright infringement lawsuits, he should have discovered Defendant's infringements earlier. However, "courts in [the Ninth Circuit] regularly find that filing other copyright infringement lawsuits does not put a party on more notice that an infringement has occurred."[85]

And while the Court in *BuzzFeed* found that the claim for copyright infringement in that case was barred due to statute of limitations despite the discovery rule, there are material differences between *BuzzFeed* and this instant lawsuit. First, the plaintiff in *BuzzFeed* is a sophisticated licensing company—Philpot, as opposed to Minden Pictures, is an individual who does not have any employees or specialized software for searching for infringements of his copyrighted works.

Second, the plaintiff in *BuzzFeed* did not exercise any diligence to identify the infringement in that case.[86] In contrast, here Plaintiff was diligent in his search

---

[85] *Minden Pictures, Inc. v. The Excitant Grp., LLC*, No. CV 20-08146 PA (JPRx), 2020 U.S. Dist. LEXIS 247769, at *8 (C.D. Cal. Dec. 22, 2020) (citing *Free Speech Systems, LLC v. Menzel*, 390 F. Supp. 3d 1162, 1170 (N.D. Cal. 2019)).

[86] *Minden Pictures, Inc. v. BuzzFeed, Inc.*, 309 F. Supp. 3d 461, 467 (S.D.N.Y. 2019) ("Some of BuzzFeed's articles were posted as early as 2011, and Minden Pictures provides no explanation for its delayed filing of this lawsuit beyond its allegation that it had no reason to discover the alleged infringement prior to 2017.").

for The Post-Examiner's infringement of the Ted Nugent Photo.  Philpot regularly performed image searches for infringements of his Ted Nugent Photo, yet despite that diligence he did not discover The Post-Examiner's infringements until May 9, 2017; May 8, 2017; and May 18, 2018, respectively.[87]   As the Court noted in *BuzzFeed*, "The test is not whether a plaintiff could have learned of their injury; rather, it is whether, with the application of reasonable diligence, they should have known of their injury."[88]  As the only evidence in this case regarding when Philpot could have discovered the Post-Examiner's infringements with the application of reasonable diligence indicates May 2017, summary judgment should be denied.

## IV.   CONCLUSION

Defendant's Motion for Summary Judgment based on two unpled affirmative defenses is a transparent last-ditch effort to save itself in this lawsuit.  If Defendant really thought the affirmative defenses of fair use and the statute of limitations barred Plaintiff's claim, it would have and should have pled the defenses in its Answer, or at the very least, before the close of discovery.  Nevertheless, not only is there no evidence to support either defense, the only evidence in the record conclusively negates both affirmative defenses.  Accordingly, Defendant's Motion for Summary Judgment should be denied in its entirety.

---

[87] *See* Philpot Motion Dec. at ¶ 21.

[88] *BuzzFeed, Inc.*, 309 F. Supp. 3d at 467.

Dated: August 2, 2021

KRISTENSEN LLP

 /s/ John P. Kristensen
John P. Kristensen (SBN 224132)
Jesenia A. Martinez (SBN 316969)
KRISTENSEN LLP
12540 Beatrice Street, Suite 200
Los Angeles, California 90066
Telephone: 310-507-7924
Facsimile:  310-507-7906
john@kristensenlaw.com
jesenia@kristensenlaw.com

ATTORNEYS FOR PLAINTIFF

1

## CERTIFICATE OF SERVICE

2

I certify that on August 2, 2021, the foregoing document titled
**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT** was served via CM/ECF upon the following
parties pursuant to Federal Rule of Civil Procedure 5:

3

4

5

Stephen M. Lobbin
Austin J. Richardson
SML Avvocati P.C.
4640 Cass Street #90142
San Diego, California 92019
Tel: (949) 636-1391
Email: sml@smlavvocati.com
Email: ajr@smlavvocati.com

6

7

8

9

10

11

*Counsel for Defendant the Baltimore Post-Examiner
d/b/a The Los Angeles Post-Examiner*

12

13

Dated: August 2, 2021                      **KRISTENSEN LLP**

14

15                                            */s/ John P. Kristensen*

16                                            John P. Kristensen

17

18

19

20

21

22

23

24

25

26

27

28